IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEONCA DENISE SHEPHERD, | ) | Case No. 1:18-cv-1904 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**I.      Introduction**

Plaintiff, Deonca Denise Shepherd, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for supplemental security income ("SSI") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. § 405(g) and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 10. Because the ALJ's decision was supported by substantial evidence and because Shepherd has not identified any incorrect application of legal standards, the final decision of the Commissioner must be AFFIRMED.

## II. Procedural History

On September 18, 2014, Shepherd applied for SSI. (Tr. 487).[1] Shepherd alleged that she became disabled on May 1, 2014 (Tr. 216, 220) due to injuries she sustained in a bus accident that same day. (Tr. 488). The Social Security Administration denied Shepherd's application initially and upon reconsideration. (Tr. 376, 358). Shepherd requested an administrative hearing. (Tr. 392). Three hearings took place at the administrative level. The first hearing took place on September 1, 2016 before ALJ Cheryl Rini. ALJ Rini determined that a second hearing was necessary and it took place on January 10, 2017. ALJ Rini did not issue a decision and became unavailable to do so. (Tr. 310). ALJ Frederick Andreas heard Shepherd's case on September 7, 2017, and denied the claim in a December 7, 2017, decision. (Tr. 54-61). On July 24, 2018, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). On August 16, 2018, Shepherd filed a complaint to seek judicial review of the Commissioner's decision. ECF Doc. 1.

## III. Evidence

### A. Relevant Medical Evidence

On May 1, 2014, Shepherd was in a bus accident. She was treated at an emergency room at Marymount Hospital for possible ankle fracture and neck pain and was discharged. (Tr. 620). The same day, she returned to the hospital with complaints of increased back pain and worsening headache. (Tr. 624-625).

#### 1. Treatment for Left Ankle

On May 5, 2014, Shepherd returned to the hospital complaining of increased swelling in her left ankle. X-rays showed possible osteochondritis but no evidence of fracture. (Tr. 645).

---

[1] The administrative transcript is in ECF Doc. 9. Shepherd also applied for disability insurance benefits (DIB) under Title XVI of the Social Security Act, but her income from workers' compensation benefits made her ineligible for DIB. (Tr. 255).

An MRI of Shepherd's left ankle showed degenerative arthrosis, chronic sprain, posterior tibial tendinosis, tenosynovitis, and a non-displaced osteochondral defect of the medial talar dome. (Tr. 684-685).

Shepherd attended physical therapy from May 14, 2014 to June 20, 2014. (Tr. 1536-1552). Shepherd's therapist noted that she improved in pain free range of motion, particularly with her left ankle. However, her progress was limited due to her limited participation in therapy sessions. (Tr. 774).

On September 4, 2014, Shepherd underwent arthroscopic debridement of her left ankle with ligament debridement and repair and left tibial tendon debridement and repair. (Tr. 840-841). Shepherd then returned to physical therapy. (Tr. 954). An MRI of Shepherd's left ankle on January 22, 2015 showed changes suggesting scarring or fibrosis and prominent edema. (Tr. 1161).

Shepherd continued to treat for pain in her left ankle. She reported decreased mobility and started using a cane to walk. On June 8, 2017, Shepherd underwent a left talonavicular fusion of the left ankle. (Tr. 2165-2166). Following her surgery Shepherd was using a walker boot and rolling knee walker. However, her pain was controlled with medication and she was healing well with good pedal pulses and good sensation. (Tr. 2159). By August 2017, Shepherd no longer required a walker boot and was instructed to use a walker as she worked toward ambulating normally. (Tr. 2297-2298).

### 2. Treatment for Neck and Left Shoulder

Shepherd also complained of pain in her neck and left shoulder. A physical examination in August 2014 showed tenderness in her left shoulder but full muscle strength, normal reflexes and intact sensation. (Tr. 701-702). An MRI showed subacromial impingement, a partial thickness tear of the supraspinatus tendon, and a labral anterior and posterior tear. (Tr. 698). A

nerve conduction study in May 2015 showed no evidence of acute cervical radiculopathy. (Tr. 1682).

Shepherd reported increased arm and shoulder pain after she was involved in another motor vehicle accident in June 2015. (Tr. 1881). In November 2015, she underwent arthroscopic surgery on her left shoulder with excision of labral tear, release of the biceps tendon, and open subacromial decompression. (Tr. 1298).

In February 2016, Shepherd had diminished strength in her left shoulder, but her strength was otherwise normal, and she had a normal gait and normal peripheral sensation. (Tr. 1200). By June 2016, Shepherd had regained full range of motion in her left shoulder. (Tr. 1211).

December 2016 treatment notes show that Shepherd was using a cane to walk, but her strength was intact and symmetrical in all extremities. She had normal sensation and normal reflexes. (Tr. 1477-1478). In July 2017, Shepherd continued to complain of shoulder pain, but her physical examination showed that she had full range of motion in her left shoulder. (Tr. 2180-2181).

Shepherd also treated for mental impairments, depressive disorder and adjustment disorder with depressed mood. (Tr. 62, 987-988, 1034-1045, 1510-1518). Because Shepherd's appeal has raised no issue concerning the ALJ's assessment of these impairments, it is unnecessary to include a summary of them in this report.

**B.     Relevant Opinion Evidence**

**1.     Consultative Examiner – Ralph Kovach, M.D.**

On October 24, 2016, Dr. Ralph Kovach evaluated Shepherd for her workers' compensation claim. (Tr. 1523-1527). He noted that Shepherd had limited range of motion in her left shoulder, and tenderness and limited range of motion in her left ankle. He found that Shepherd had not reached maximum medical improvement, and that vocational rehabilitation

was appropriate. (Tr. 1525-1527). He opined that Shepherd was unable to work at that time. (Tr. 1526).

### 2. State Agency Physicians

On December 18, 2014, state agency physician Maria Congbalay, M.D. reviewed Shepherd's medical records and opined that she could perform light work. (Tr. 350-353).

Lynne Torello, M.D., reviewed Shepherd's records on July 15, 2015 and agreed with the functional limitations opined by Dr. Congbalay. (Tr. 368-370).

### C. Relevant Testimonial Evidence

The only issue that Shepherd raises in this appeal is whether the ALJ considered the evidence from all three administrative hearings. The testimonial evidence from each of the hearings is summarized below.

### 1. September 1, 2016 Hearing

ALJ Cheryl Rini conducted the first hearing on September 1, 2016. (Tr. 188). Shepherd graduated from high school but was in special education classes. She had training to be a state tested nurse's aide ("STNA"). She also obtained a commercial driver's license. (Tr. 202). She previously worked as a school bus driver and as an STNA. (Tr. 203-211, 216-220). Shepherd testified that she was unable to perform her past work.

Shepherd was involved in an accident while driving a bus. Another bus hit her and she was ejected out the front window of her bus. (Tr. 213-214).

Shepherd was using a cane at the administrative hearing. It was prescribed by a nurse practitioner a month before the hearing. (Tr. 224).

A vocational expert, Dr. Robin Mosley ("VE") briefly testified at the first hearing. The VE considered Shepherd's past work to be that of a school bus driver, school bus monitor and a nurse's aide. (Tr. 220).

5

This first administrative hearing was cut short and continued because many of Shepherd's medical records were not in the file. A supplemental hearing was scheduled for January 10, 2017. (Tr. 247).

## 2.     January 10, 2017 Hearing

ALJ Rini conducted the supplemental hearing on January 10, 2017. (Tr. 245-306). Shepherd described her medical history since the 2014 accident to ALJ Rini. Shepherd experienced many different physical problems stemming from the accident. (Tr. 260-273). The ALJ determined that there were still records that had not been provided by Shepherd's attorney. (Tr. 260-272). Shepherd underwent surgeries to her left ankle and left shoulder. She was going to have another surgery for her ankle because a cyst had developed at the previous surgical site. (Tr. 268-269). She also described some recent breathing problems. (Tr. 264).

Shepherd estimated that she could stand for about ten minutes. (Tr. 279). She stated that she could walk about ten steps - would need to rest for one minute - and then could walk ten more steps. However, she felt that she would need to rest for 20 minutes before she would be able to walk ten steps a third time. (Tr. 280). Sometimes Shepherd could lift a gallon of milk but sometimes it would fall out of her hand. She estimated that she could normally lift a gallon of milk if using both hands. (Tr. 286). Shepherd could reach over her head with her right hand but not her left. (Tr. 281). Shepherd testified that she spent about five hours sitting each day. (Tr. 287). She spent about a half hour per day standing or walking. (Tr. 291). She had constant pain in her left shoulder, left leg and foot. (Tr. 282).

Shepherd was able to do housework. It took her two days to do it, and she received help from her 13 year-old daughter and her 21 year-old daughter. (Tr. 284). Shepherd was no longer able to cook and ate a lot of TV dinners. (Tr. 285). She had trouble sleeping most nights, but usually took a two and a half hour nap in the afternoon. (Tr. 286, 288).

6

A new vocational expert, Thomas Nimberger, testified at the second hearing. (Tr. 248). Shepherd stipulated to the previous work determined by VE Mosley – school bus driver, school bus monitor and nurse's aide. (Tr. 220, 259). VE Nimberger testified that an individual with Shepherd's education and previous work experience who could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk six to eight hours a day and sit six to eight hours a day; could only frequently use foot controls with the left foot; could never climb any ladders, ropes or scaffolds; could occasionally climb ramps or stairs; could frequently balance, stoop, kneel, crouch and crawl; could frequently reach overhead with the left arm; must avoid work at unprotected heights, around dangerous moving machinery, or wet, slippery or uneven surfaces; could complete three to four-step tasks with adequate pace and endurance; could have occasional or superficial interaction with the public; and must have any changes in the work setting explained well, would not be able to perform Shepherd's previous jobs. (Tr. 295-296). However, this individual would be able to work as a packager, a bench assembler, or a mail clerk. There were significant numbers of these jobs in the national economy. (Tr. 297).

If the individual was limited to sedentary jobs, she could perform the jobs of polisher, mailing house worker or addresser, a call out operator and a document preparer. (Tr. 302-303). If the individual was limited to using only one arm or one hand, she would not be able to perform those jobs. (Tr. 298). If the individual was limited to standing two hours a day, she would not be able to perform the jobs of packager or mail clerk. (Tr. 298-299). If the person required a nap for three hours a day, no jobs would be available for the individual. (Tr. 299).

The VE testified that employers tolerate between one to ten percent of off-task time during the workday. (Tr. 299). The VE opined that no jobs would be available for individuals who missed two or more days of work per month. (Tr. 300-301).

7

### 3.     September 7, 2017 Hearing

Because ALJ Rini became unavailable, a third administrative hearing took place on September 7, 2017 before newly-assigned ALJ Frederick Andreas. (Tr. 309-310). Before the hearing, ALJ Andreas reviewed the information in the record and concluded he could not make a decision based on the record, noting he could only issue a decision under that circumstance if it were fully favorable. For that reason, he scheduled another hearing. (Tr. 310). Shepherd's attorney asked if the transcript from the prior hearing was going to be made a part of the record. The ALJ informed the attorney that the audio recording was part of the record but that it had not been transcribed. (Tr. 311-312)

Shepherd explained that she had been involved in a bus accident. She had prior work experience as a school bus driver and as a nurse's assistant. (Tr. 316). Shepherd stated that she could no longer work due to the pain from her foot to the middle of her back. (Tr. 316). She took pain medication and used a TENS unit to alleviate the pain. (Tr. 322) She compared the pain to child labor pains. (Tr. 322). Shepherd could not sleep continuously due to pain; she slept about two hours at a time. (Tr. 324).

Shepherd's workers' compensation claim was ongoing. She had undergone another surgery three months earlier, on June 8th, and was still waiting for physical therapy to be approved. (Tr. 317). She was still wearing a long surgical boot. (Tr. 327).

Shepherd explained that she had two surgeries on her left ankle and one on her left shoulder. (Tr. 318). She was unable to lift ten pounds due to her shoulder. She estimated she could lift five to six pounds. (Tr. 319). Since the accident, her pain levels had improved. (Tr. 320). However, she was no longer able to cook or clean. Her daughters did these things for her. (Tr. 321). On good days she had the TV on and would fall asleep. (Tr. 321). On bad days, she was unable to get off the couch. She hadn't been up her stairs for over eight weeks. (Tr. 322).

Shepherd was being treated for depression. She also had diabetes. (Tr. 323). She used an inhaler for breathing. (Tr. 327).

VE Mark Anderson testified at the third hearing. (Tr. 331-339). The VE considered Shepherd's past work to be that of a bus driver and a nurse's assistant. (Tr. 332). The VE opined that an individual with Shepherd's education and work history who could perform work at the light exertional level but pushing and pulling with the lower extremities was limited to frequently; she could climb ramps and stairs[2] occasionally; could not climb ladders or ropes; could frequently balance, stoop, kneel, crouch or crawl; and was limited to occasional overhead reaching with her left arm, would not be able to perform Shepherd's past work. (Tr. 333). However, this individual would be able to work as an inspector and hand packager, an assembler of small products, and an electronics worker. There were a significant number of these jobs in the national economy. (Tr. 334).

If the individual were unable to ambulate more than two hours; could only reach overhead occasionally and could not use foot pedals that required bilateral or left foot use, she would still be able to perform the jobs of electronics worker and inspector/hand packager. She would not be able to perform the job of assembler of small products but would be able to perform the job of mail clerk. (Tr. 335). If the individual was reduced to work at the sedentary level, she would be able to perform the jobs of patcher, touch-up screener, and table worker. (Tr. 336).

The VE testified that employers will usually tolerate up to two absences, tardiness or leaving early per month. (Tr. 334). They will also tolerate an individual being off-task up to 15% of the workday. (Tr. 336).

---

[2] It appears that this hypothetical included occasional climbing of stairs and also precluded stair climbing. (Tr. 333). However, Shepherd does not raise this issue in her appeal.

9

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

5. Shepherd had the residual functional capacity to perform sedentary work except that she could only frequently push or pull with her lower extremities; could only occasionally use foot pedals that require bilateral or left foot use; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and frequently balance, stoop, kneel, crouch, or crawl; was limited to occasional overhead reaching with her left arm; and must avoid even moderate exposure to unprotected heights and uneven terrain. She had the ability to complete three to four-step tasks consistent with work that has a specific vocational preparation level of one or two. She retained the ability to have occasional and superficial interaction with the public in an environment where changes can be well explained. (Tr. 59).

10. Considering her age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Shepherd could perform. (Tr. 65).

Based on all his findings, the ALJ determined that Shepherd was not under a disability from May 1, 2014, the alleged onset date, through the date of his decision. (Tr. 66).

## V. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or reweigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). If supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the

evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Elam*, 348 F.3d at 125 ("The decision must be affirmed if . . . supported by substantial evidence, even if that evidence could support a contrary decision."); *Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if supported by substantial evidence, however, the court will not uphold the Commissioner's decision when the Commissioner failed to apply proper legal standards, unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting Sarchet v. Charter, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

11

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a).

### B. Whether the ALJ Erred in Failing to Incorporate Shepherd's Testimony from the First Two Administrative Hearings.

Shepherd argues that the ALJ failed to follow Social Security regulations by failing to incorporate her testimony during the first two administrative hearings. ECF Doc. 11 at 5. She cites the following portion of SSR 16-3, 2016 SSR LEXIS 4 in support of her argument:

> Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing before an administrative law judge or hearing officer.

Shepherd argues that ALJ Andreas failed to follow this regulation because he did not incorporate transcripts of the first two hearings. Shepherd argues that this shows that ALJ Andreas did not consider her testimony from these hearings when assessing her credibility. But, as argued by the Commissioner, failing to incorporate transcripts does not necessarily prove that the ALJ didn't consider Shepherd's testimony from the prior administrative hearings.

During the third hearing, the following discussion took place between Shepherd's attorney and the ALJ:

> ALJ: Mr. Friedlander, do you have any objection to any of the exhibits that have been submitted?
>
> ATTY: No, I don't but for, just housekeeping purposes is the transcript of the prior hearing going to be made a part of the record? I would like it so.
>
> ALJ: I am not planning on making it a part of the record. I wasn't at that hearing and it's not going to help me a lot.
>
> ATTY: Well, I was just doing it for the purposes of having a complete record so –
>
> ALJ: The reason that we are here is so that you can, I hate to say it, represent your case, so to speak and certainly there is an audio, that hearing has been preserved. It has not been –
>
> ATTY: I know it has not been transcribed.
>
> ALJ: That's correct.
>
> ATTY: Well, I'd just like that on the record.

(Tr. 311). This dialogue does not prove that the ALJ didn't listen to the audio tapes before issuing his decision. Thus, even if Shepherd is correct that the ALJ was required to consider the testimony from the first two hearings, there is no evidence that he didn't.

Shepherd recognizes that the ALJ's credibility findings are to be accorded great weight but argues that he is not permitted to simply recite the factors from SSR 16-3. She cites this section of SSR 16-3 in support:

> It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

13

The ALJ's decision cited several examples of Shepherd's complaints not matching the medical evidence. He noted that she was "constantly" seeking pain medication for at least a "half a dozen" different pain complaints that varied over time. "However, her physical examinations remained unremarkable with only 'mildly' restricted range of motion in her left shoulder." And, her doctor was recommending conservative treatment and a bone scan showed minimal arthritis. (Tr. 61). In December 2016, even though Shepherd used a cane to walk, "her strength was intact and symmetrical in all extremities, she had normal sensation and normal reflexes." (Tr. 62) Finally, in considering Shepherd's credibility, the ALJ stated:

> The above evidence is not entirely consistent with the claimant's allegations that she is unable to perform any work. The medical record confirms that the claimant has severe impairments that cause significant functional limitations. However, the record also shows that doctors have been able to control the claimant's symptoms with routine conservative care such as medication and physical therapy (11F/1; 14F/12, 13; 43F/14). The claimant's functional abilities have improved with surgical treatment and continued physical therapy. Her physical examinations are generally unremarkable, and indicate that the claimant typically exhibited "mild" or "moderate" limitations in strength or range of motion (14F/13; 19F/1; 37F/16, 19; 43F/11, 14). Likewise, although the claimant sometimes appeared tearful or irritable, she has a limited psychological treatment record, and her examinations indicate that her memory, attention and concentration remain intact (3F/19; 8F/6; 13F/2; 24F/1; 47F/7). Taken as a whole, the record does not demonstrate that the limitations resulting from the claimant's impairments are totally work preclusive, or greater than provided in the above residual functional capacity assessment.

(Tr. 62). The ALJ did not simply recite the factors described in the regulations for evaluating symptoms. He compared Shepherd's statements to the medical evidence and, citing specific medical records, he explained why he did not find it to be entirely consistent with Shepherd's testimony.

Shepherd also contends that the ALJ violated an internal HALLEX directive addressing situations when administrative judges conduct hearings but are unavailable to issue a decision. HALLEX I-2-8-40 provides that "if the [newly assigned] ALJ holds a new hearing, the ALJ will consider all pertinent documentary evidence admitted into the record at the prior hearing, the oral

14

testimony at the prior hearing, and the evidence and the testimony adduced at the new hearing when making a decision."

> HALLEX I-2-40(B) provides that, when a case is reassigned, the new ALJ:
>
> will review the evidence of record, including the audio recording of the hearing… If the reassigned ALJ intends to issue a fully favorable decision after reviewing the record and the audio recording, the ALJ need not conduct another hearing and will issue a decision. However, if the ALJ intends to issue a less than fully favorable decision based on the information before him or her, or the ALJ requires more information to make a decision, the ALJ will assess whether another hearing is necessary.

At the outset of the hearing, the ALJ stated, "I reviewed the information in the record and determined I couldn't make a decision based on the decision in the record. It would have had to have been a fully favorable decision so we're here for a hearing…" This statement certainly gives the impression that the ALJ was following the instructions from HALLEX.

But, even if he didn't follow the instructions from HALLEX, Shepherd hasn't shown that she was prejudiced by this alleged procedural error. HALLEX is an internal manual that serves to convey "'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.,* 539 F.3d 395, 397 (6th Cir. 2008). District courts that have granted relief for failure to comply with HALLEX have required that the plaintiff demonstrate prejudice from the failure to follow the procedures. *Creech v. Comm'r of Soc. Sec.,* 581 F. App'x 519, 520 (6th Cir. 2014).

Shepherd has not cited any testimony from her first two administrative hearings that would have made any difference in the ALJ's decision. Shepherd's testimony at the three hearings was generally consistent. She gave similar descriptions of her symptoms and functional abilities at all of the hearings (with the exception that she had another surgery between the second and third hearings). The fact that Shepherd doesn't cite any of her testimony from the

hearings is telling. She has not demonstrated prejudice from the ALJ's alleged failure to follow HALLEX I-2-8-40.

## VI. Conclusion

There is no evidence that the ALJ failed to consider Shepherd's testimony from the first two administrative hearings. And, Shepherd fails to cite any testimony from the first two hearing that would have made any difference in the ALJ's decision. Because the ALJ's decision was supported by substantial evidence and because Shepherd has not identified any prejudicial incorrect application of legal standards, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated: June 20, 2019

Thomas M. Parker
United States Magistrate Judge